IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL WATCHULONIS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF ATLANTA, et al., <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:23-cv-2204-TCB |

**O R D E R**

This case comes before the Court on Defendant City of Atlanta's motion [31] to dismiss for failure to state a claim.[1]

**I.   Background**

This case adds yet another layer to the controversy surrounding Intrenchment Creek Park. In 2021, the City of Atlanta ("the City")

---

[1] The City previously filed a motion [15] to dismiss Plaintiff Michael Watchulonis's original complaint. Watchulonis subsequently filed an amended complaint [29] identifying a previously unknown defendant, and the City then filed this motion [31] to dismiss. Though the amended complaint, second motion to dismiss, and second response and reply briefs are all nearly identical to the original documents, the Court will deny the original motion [15] to dismiss as it is technically moot.

authorized the development of a training center for the Atlanta Police Department ("APD") that would be located on a stretch of land in Intrenchment Creek Park, a public park in Dekalb County. *See generally* ADEEL HASSAN & SEAN KEENAN, *What is 'Cop City? The Atlanta Police Center Protests, Explained*, N.Y. TIMES (March 7, 2023), https://www.nytimes.com/article/cop-city-atlanta-protests.html. This decision sparked fierce opposition, including several intense protests in the area.

The larger public debate contextualizes this case. On June 15, 2022, Plaintiff Watchulonis, a journalist and documentary filmmaker, visited Intrenchment Creek Park to work on a news story about the controversy. Watchulonis began walking on the public trails in the park. He then saw two four-wheel ATVs and began filming them, believing them to be police vehicles.

A couple of police officers approached Watchulonis. The officers accused him of trespassing, and they escorted him out of the park. Watchulonis had to cease his filming to comply with the officers' orders. The officers then detained Watchulonis for an hour and a half and

demanded that he delete his recorded footage. The officers eventually released Watchulonis with no citations and no deletion of the footage.

Watchulonis brings three claims against the City of Atlanta and the involved officers in their individual capacities. First, he brings a 42 U.S.C. § 1983 claim, alleging that Defendants violated his First Amendment rights by retaliatorily interfering with his reporting and filming. He brings another § 1983 claim for the alleged violation of his First Amendment right to film by the seizure and detention. And lastly, he brings a § 1983 claim for the alleged violation of his Fourth Amendment rights. The City argues that it ought to be dropped as a Defendant because Watchulonis fails to state a claim for municipal liability under § 1983. The Court agrees.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim based on failure to state a claim upon which relief can be granted. To survive a 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *see also Chandler v. Sec'y of*

*Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012). Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the court need not accept as true plaintiff's legal conclusions, including those couched as factual allegations. *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. Standard for Municipal Liability Under § 1983

A municipality can be held liable for constitutional violations under § 1983 only in specific circumstances. "[A] municipality cannot be

subjected to § 1983 liability 'based upon theories akin to *respondeat superior*' . . . [O]nly deprivations arising from municipal custom or policy can result in municipal liability." *Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985) (citations omitted) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819 (1985)); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) ("As a municipality, the City cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693–94 (1978))).

The policy or custom at issue must be either "(1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell* 436 U.S. at 690–91).

Then, the plaintiff must show that the policy or custom caused the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("'It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983.'" (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987))).

The Supreme Court has also acknowledged a theory of liability based on a municipality's alleged failure to adequately train its employees. *City of Canton*, 489 U.S. at 387 ("[T]here are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983."). "[T]hese 'limited circumstances' occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

The standard for determining whether a municipality's failure to train amounts to a city policy or custom actionable under § 1983 is whether the failure to train showed a "deliberate indifference" to the constitutional rights of the people. To establish such deliberate indifference, plaintiffs must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.* (citations omitted).

Watchulonis has presented two theories of municipal liability:

(1) Atlanta was aware of a longstanding custom where persons legally filming police in public areas were regularly

6

> subject to interference with filming and sometimes pretextual arrest;
>
> (2) Atlanta's deliberately indifferent failure to monitor officers and enforce court-ordered policies and training (which themselves had to be enforced through contempt actions in two prior federal cases).

[36] at 3. Both theories require Watchulonis to allege a custom or policy of the City that caused the alleged deprivation of his constitutional rights.

Watchulonis concedes that the City has an official policy prohibiting police interference with citizens recording police activity. City of Atlanta Police Department Standard Operating Procedure, 2011, Section 4.1.1 ("All employees shall be prohibited from interfering with a citizen's right to record police activity by photographic, video, or audio means. This prohibition is in effect as long as the recording by the citizen does not physically interfere with the performance of the officer's duties.").

Therefore, Watchulonis's only remaining option is to allege that the City has an unofficial custom of unconstitutional behavior. To do this, Watchulonis cites previous incidents involving police interference with citizens' filming or photographing police activity. The City argues

that these examples are not enough to constitute a custom of constitutional violations, and therefore, Watchulonis fails to allege an actionable theory of municipal liability against the City.

### B. Watchulonis' Failure to Allege a Custom

Simply put, the previous incidents Watchulonis cites are too far in the past to establish a claim of municipal custom. Watchulonis primarily relies on previous lawsuits, unspecified settlements, and statements made during a press conference to support his claim of municipal custom. A summary of these is as follows:

- *Anderson v. City of Atlanta* (No. 1:11-cv-3398-SCJ)

    o In this case, plaintiff alleged she was falsely arrested in 2009 for photographing public police activity. Plaintiff alleged the arrest was pursuant to an unlawful policy and practice of the APD. The parties entered into a consent order that required the City to take several action steps including adding language to the APD's Standard Operating Procedure that prohibits officers from deleting/destroying recordings of police activity, increasing the penalties for officers that interfere with citizens' recording, and requiring training of officers on these measures. The City was held in contempt in 2015 for failing to comply with the Order.

- *Ruch v. City of Atlanta* (1:15-cv-3296-MLB)

    o Here, plaintiff was a journalist who brought suit following his arrest while he was covering protests in downtown Atlanta in 2014.

- *Toole v. City of Atlanta* (1:16-cv-2909-CAP)

    o Plaintiff brought suit following an arrest while filming police activity during a protest in 2014.

- *Calhoun v. City of Atlanta* (1:09-cv-3286-TCB)

    o In this case, the parties entered into a consent order. Part of the order prohibited APD officers from interfering with a citizen's right to record police activity. The order also required mandatory trainings every two years. In 2015, the City was held in contempt for its failure to adhere to requirements imposed by the order.

- *Hassan v. City of Atlanta* (1:21-cv-4629-TWT)

    o In this case, the plaintiff, a photojournalist, sued the city after being arrested while filming police activity in 2020.

- Unnamed Driver incident [29] at 43.

    o This case involves a citizen arrested under the hands-free driving law in December 2022. The citizen was allegedly filming near the area here. Deputy APD Chief Carven Tyus stated during a press conference, "We had an individual who was out attempting to film officers. We were able to get him with the hands-free law as he drove by filming our officers, so we were able to lock him up."

These six examples span across fourteen years, and importantly, five police chiefs. This timeline is too remote to state a claim for municipal liability.

"Generally, 'random acts or isolated incidents are insufficient to establish a custom or policy.'" *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4

9

F.4th 1118, 1131 (11th Cir. 2021) (quoting *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986)). To state a claim for a "longstanding custom" or to demonstrate "deliberate indifference," Watchulonis must show that this collection of prior instances is connected to the incident here, including a temporal connection. *See Khoury*, 4 F.4th at 1132 (holding that the plaintiff's municipal liability claim failed in part because "the evidence [Plaintiff] relies on is . . . too remote in time"); *Harper v. Se. Ala. Med. Ctr.*, 998 F. Supp. 1289, 1301 (M.D. Ala. 1998) (stating that prior incidents used to allege a failure to train claim "must be sufficiently related in time . . . to the conduct giving rise to the pending action.").

Most of the examples Watchulonis cites are too temporally remote to evince a municipal policy. The Eleventh Circuit has held similar lengths of time too remote. *See Khoury*, 4 F.4th at 1132 (holding that previous incidents that occurred three years before were too remote to establish a custom for municipal liability); *Church v. City of Huntsville*, 30 F.3d 1332, 1346 (11th Cir. 1994) (holding that incidents that occurred "a year or more" before the incident at issue could not support a finding that a custom existed); *see also Jackson v. City of Atlanta*, No.

1:21-cv-2578-MHC, 2022 WL 4089823, at *15 (N.D. Ga. Aug. 18, 2022) (finding that incidents that occurred between five and over ten years before the incident at issue were not sufficient to state a claim for municipal liability); *Mindler v. Clayton Cnty.*, 831 F. Supp. 856, 862 (N.D. Ga. 1993) (stating that "three remotely comparable allegations of similar conduct . . . during the six year period preceding the incident in question [are] insufficient . . . to create a question of fact" as to whether there was a municipal policy).

These cases are just a sampling. The message from the Eleventh Circuit's case law is clear: temporal proximity is a vital element for a series of prior incidents to indicate a municipal custom.

Of the six examples Watchulonis refers to, only two occurred within the past five years, and only one occurred within the past year. Even if the Court were to consider *Calhoun* and *Anderson* as 2015 incidents based on the contempt orders in those cases, they are still eight years in the past. The above case law makes clear that this is too remote in time to establish a municipal custom. And because "[a] single incident would not be so pervasive as to be a custom or practice," the most recent example at the press conference does not suffice to allege a

11

municipal custom, even if it proved to be a constitutional violation. *Grech.*, 335 F.3d at 1330 n.6 (citing *Tuttle*, 471 U.S. at 823–24).

Nor does it matter that in several of the cases Watchulonis cites, the plaintiff did adequately allege a municipal custom. Those cases are factually distinct from this one. For example, in *Ruch v. City of Atlanta*, our Court found that the plaintiff sufficiently alleged a municipal custom to survive a motion to dismiss. No. 1:15-cv-3296-MHC, [40] at 28 (N.D. Ga. Aug. 25, 2016). But the Court noted that the incidents that the plaintiff used as evidence of a municipal custom occurred *after* the arrest of the plaintiff, indicating that there was a real-time custom. *Id.* at 26–27 ("It is noteworthy that the Court's contempt finding came after the arrest of Ruch, which means the City did not implement the training requirements imposed in *Anderson* until after the incidents which give rise to the current litigation."). This type of contemporaneous evidence is not present here.

Similarly, *Hassan v. City of Atlanta* does not help Watchulonis because there, plaintiff was challenging an official law of the City, not trying to establish an unofficial custom. *Hassan v. City of Atlanta*, No. 1:21-cv-4629-TWT, [20] at 7 (N.D. Ga. June 1, 2022) ("[T]he Plaintiff

has sufficiently identified a government policy on which to base his § 1983 claim(s) against the City."). Thus, it does not matter that the municipal liability claims survived a motion to dismiss there. These cases are distinguishable from the present one in vital ways and do not support a finding of municipal liability here.

Last, all but one of the previous incidents occurred under a different police chief from the current chief, who was in command during the incident here. This is another important factor in assessing the existence of a municipal custom, as the chief of police is the final policymaker. *See Khoury*, 4 F.4th at 1132 (noting that the chief of police at the time of incident in question was different from the one in office during the previous example); *Jackson*, 2022 WL 4089823, at *15 ("The fact that all of the incidents [plaintiff] points to occurred over two years prior to Erika Shields's assumption of the role as final decisionmaker also renders [plaintiff's] allegations insufficient to establish *Monell* liability.").

The incident here took place under the tenure of current Chief of Police Darin Schierbaum, who assumed the role as interim chief in June 2022 and was appointed as chief later in the year. Press Release,

Mayor's Office of Communications, Mayor Dickens Appoints Darin Schierbaum as Atlanta's 26th Chief of Atlanta Police Department (Oct. 31, 2022) https://www.atlantaga.gov/Home/Components/News/News/14426/672?arch=1&npage=6. Accordingly, apart from the press conference, all the other incidents occurred under different police chiefs. Watchulonis has not put forward adequate evidence that Chief Schierbaum, as the final policymaker, was aware of any repeated acts that constituted an unofficial custom.

## IV.  Conclusion

For the foregoing reasons, Watchulonis has failed to state a claim of municipal liability. The City of Atlanta's motion [31] to dismiss is granted, and its previous motion to dismiss is denied [15] as moot. The Clerk is directed to terminate the City as a party-Defendant.

IT IS SO ORDERED this 13th of December, 2023.

_____
Timothy C. Batten, Sr.
Chief United States District Judge