IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL WATCHULONIS,

    Plaintiff,

v.

CITY OF ATLANTA, et al.,

    Defendants.

CIVIL ACTION FILE

NO. 1:23-cv-2204-TCB

**O R D E R**

This case comes before the Court on the motions [40, 41] of Plaintiff Michael Watchulonis to amend his complaint[1] and for reconsideration of the Court's order [38] granting the City of Atlanta's motion to dismiss.

---

[1] Watchulonis originally filed a motion [39] to amend his complaint but later that day filed a corrected version of the motion [41] to reflect the accurate date of filing. The Court will consider the corrected version [41] and dismiss the original version [39] as moot.

## I. Background

Watchulonis originally filed suit against the City of Atlanta ("the City") and several individual police officers. He alleges multiple claims of constitutional violations arising out of his arrest while filming at Intrenchment Creek Park—the future site of the politically controversial training center for the Atlanta Police Department ("APD").

Watchulonis has altered his complaint twice: amended once to add factual allegations [14] and corrected again to name previously unknown police officers [29]. The City then moved to dismiss Watchulonis's amended complaint. The Court granted [38] this motion, holding that Watchulonis failed to state a claim of municipal liability and dropped the City as a Defendant. The Court noted that the incidents Watchulonis cited as evidence occurred too far in the past to qualify as municipal custom.

Watchulonis now brings these motions, arguing that the Court should reevaluate its decision to drop the City as a Defendant in light of more examples of municipal custom.

## II. Legal Standard

The Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration. Local Rule 7.2(E) provides that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary." A party may move for reconsideration only when at least one of these three elements exists: (1) the discovery of new evidence; (2) an intervening development or change in the controlling law; or (3) the need to correct a clear error or manifest injustice. *Pres. Endangered Areas of Cobb's Hist., Inc. v. United States Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995) (citation omitted).

A motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court could have done it better the first time." *Id.* (internal quotation marks omitted). In other words, a party "may not employ a motion for reconsideration as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.,* 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000)

(citations omitted); *see also Godby v. Electrolux Corp.*, Nos. 1:93-cv-353-ODE, 1:93-cv-126-ODE, 1994 WL 470220, at *1 (N.D. Ga. May 25, 1994) ("A motion for reconsideration should not be used to reiterate arguments that have previously been made. . . . '[It is an improper use of] the motion to reconsider to ask the Court to rethink what the Court has already thought through—rightly or wrongly.'" (alteration in original) (citation omitted) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983))); *In re Hollowell*, 242 B.R. 541, 542–43 (Bankr. N.D. Ga. 1999) ("Motions for reconsideration should not be used to relitigate issues already decided or as a substitute for appeal. Such motions also should not be used to raise arguments which were or could have been raised before judgment was issued." (citations omitted)).

**III.  Discussion**

    **A.  Motion for Reconsideration**

Watchulonis has put forward four more instances of police/citizenry interactions and argues that the Court should consider these occurrences and reevaluate whether he has stated a claim for municipal liability against the City.

A summary of the four examples is as follows:

- *Omelchenko v. City of Atlanta, et al.* (No. 1:23-cv-4041-VMC) (N.D. Ga.)

    o This lawsuit was filed on September 9, 2023. Plaintiff Lev Omelchenko alleges that on September 8, 2021, he was arrested by APD while filming a group of citizens protesting at an Atlanta City Councilperson's home. The protest related to the City Council's vote on the construction of the police training center. Omelchenko alleges that he identified himself to the officers as a documentary filmmaker. Omelchenko was not charged, and he was later released.

- *State of Georgia v. Thomas Jurgens* (No. 23-SC-189192) (Superior Court of Fulton County)

    o Thomas Jurgens was arrested and joined in a RICO indictment in the Superior Court of Fulton County on March 23, 2023, as a result of allegedly filming and documenting a protest in a permitted area.

- *Calhoun v. Pennington* (No. 1:09-cv-3286-TCB) (N.D. Ga.)

    o The plaintiffs in the case submitted evidence of a citizen complaint where the citizen alleged that he had been unlawfully arrested and that the APD had interfered with his recording of police activity in October 2022.

- Ryan Fatica Arrest

    o Plaintiff alleges that in May 2022, Ryan Fatica, a journalist, was covering a training center protest when he was arrested. Plaintiff says that he was released without any charges or a citation. There does not seem to be a lawsuit associated with this incident, as Plaintiff did not provide supporting documentation in his exhibits.

Watchulonis contends that the Court should reconsider whether the City has a municipal custom of interfering with citizen's filming activities in light of these more recent incidents.

He does not offer any explanation for why he did not introduce this evidence earlier.

Watchulonis missed his chance, and it is inappropriate for the Court to reconsider its previous decision on this motion for reconsideration. *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) ("[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion."). To succeed on a motion for reconsideration, Watchulonis must show that there is either (1) the discovery of new evidence; (2) an intervening development or change in the controlling law; or (3) the need to correct a clear error or manifest injustice. *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003) (citations omitted). Watchulonis has not argued *any* of these grounds.

Indeed, the timing of the incidents indicates that this evidence is not new, and Watchulonis could have included them in his initial complaint or later complaints. Watchulonis filed this action on May 16, 2023—several months after the citizen complaint in *Calhoun* and the Jurgens indictment, and around a year after the Ryan Fatica incident. And even though the *Omelchenko* lawsuit was initiated after this case was filed, Watchulonis has twice amended/corrected his complaint, and the second time was on October 24, 2023—over a month after the *Omelchenko* lawsuit was filed. All this to say, there seems to be no reason (and Watchulonis does not offer one) that Watchulonis did not include these incidents in his initial complaint or the subsequent complaints.

Watchulonis also argues that he should not have to allege "every instance in support of custom before discovery" because this would amount to a heightened pleading standard. [40] at 7.

First, the Court reminds Watchulonis that a motion for reconsideration is not "a vehicle to . . . repackage familiar arguments to test whether the Court will change its mind." *Brogden*, F. Supp. 2d at 1338 (citations omitted). Here, there is not even a façade of

repackaging; Watchulonis raised this same exact argument, citing the same exact cases, using the same exact words, in his initial response to the City's motion to dismiss. *See* [36] at 4, 10. The Court assures Watchulonis that it fully and thoughtfully considered this argument the first time he raised it. Watchulonis cannot make this argument again on a motion to reconsider, as there is no intervening development or change in the controlling law on this issue. *See Bryan*, 246 F. Supp. 2d at 1258–59.

The fact remains that Watchulonis failed to state a claim against the City because he did not allege *any* instance of custom. *See* [38] at 11–12 (holding that the examples Watchulonis cited were too temporally remote to qualify as evidence of municipal custom). The Court did not impose a heightened pleading standard on Watchulonis by requiring him to comply with the basic requirements of Federal Rule of Civil Procedure 12(b)(6) and allege a municipal custom, which requires temporal proximity.

Watchulonis also stresses he ought to have the chance to develop evidence of custom throughout discovery, including deposing Police

Chief Schierbaum.[2] But that is not how litigation works in this circuit. The Eleventh Circuit has clearly stated, in affirming a district court's dismissal of a municipal liability claim at the motion to dismiss stage, that "discovery *follows* a well-pleaded complaint; not the other way around." *Carter v. DeKalb Cnty.*, 521 F. App'x 725, 729 (11th Cir. 2013) (per curiam).

And as much as Watchulonis emphasizes municipal custom cases that proceeded through discovery, the Court can also point to municipal custom cases that did *not* proceed through discovery because the plaintiffs failed to state a claim—exactly what happened here. *See, e.g.*, *Wade v. City of Miami Beach*, 565 F. Supp. 3d 1248, 1252 (S.D. Fla. 2021) (holding that "three largely outdated, isolated incidents" that happened, three, six, and eleven years ago, respectively, "cannot raise an inference of a widespread custom"); *Williams v. City of Miami*, No.

---

[2] The Court also points out that three of the four new instances at issue still occurred before Chief Schierbaum was appointed chief of police. Watchulonis does not argue that Chief Schierbaum is not the final policymaker but insinuates that he had previous knowledge of these incidents before his ascendance to chief of police. The Court declines to address this argument, as Watchulonis should have raised it in his initial arguments on the motion to dismiss. *Brogdon*, 103 F. Supp. 2d at 1338 ("Parties therefore may not employ a motion for reconsideration as a vehicle to . . . introduce novel legal theories. . . .") (citations omitted)).

9

21-23287-CIV, 2021 WL 4990005, at *4 (S.D. Fla. Oct. 27, 2021) (holding that the plaintiff failed to state a claim of municipal liability and noting that the twenty-four incidents cited "are largely sporadic and unrelated occurrences spanning fifteen years" and do not support a municipal custom); *Carter v. DeKalb Cnty.*, No. 1:12-cv-00539-JOF, 2012 WL 12893295, at *4 (N.D. Ga. Oct. 18, 2012), *aff'd*, 521 F. App'x 725 (11th Cir. 2013) (holding that the plaintiff failed to state a claim of municipal liability because he did not sufficiently allege a municipal custom).

### B.  Motion to Amend

Finally, Watchulonis seeks leave to amend his complaint to include the additional custom examples. The Court first notes that Watchulonis has already substantively amended his complaint once and corrected it a second time. As discussed above, Watchulonis has presented no argument as to why he did not include this previously available evidence in his initial complaint or amended complaint.

The Court finds that Watchulonis acted with undue delay and will deny his motion to amend his complaint. *Abramson v. Gonzalez*, 949

F.2d 1567, 1581 (11th Cir. 1992) (noting undue delay as "grounds for denial of the plaintiffs' motion to amend").

"[W]hen a plaintiff fails to state a reason for failing to amend earlier, such as newly discovered facts, a change in law, or other mitigating circumstances, denying the motion to amend is especially proper." *Marchelletta v. Bergstrom*, No. 1:14-cv-2923-ELR, 2017 WL 5505301, at *1 (N.D. Ga. Feb. 15, 2017), *aff'd*, 752 F. App'x 724 (11th Cir. 2018) (citations omitted); *see also Maynard v. Bd. of Regents of Div. of Univs. Of Fla. Dep't of Educ. Ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (holding that the district court did not abuse its discretion in denying motion to amend complaint when "there seems to be no good reason why [the plaintiff] could not have made the motion earlier"); *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041–42 (11th Cir. 2006) (per curiam) (noting that "the [plaintiffs] offered no good reason for their delay" when holding that the district court "reasonably found that the [plaintiffs] waited too long to file . . . motions to amend their complaints"); *Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (per curiam) (holding that the district court did not clearly abuse its discretion in denying the

plaintiff's motion to amend when the plaintiff had "unexplained tardiness" when she failed to discover and add a claim in her original or first amended complaint).

Accordingly, the Court finds that Watchulonis had ample opportunity to include the additional incidents in his previous complaints, and therefore, his motion to amend his complaint was unduly delayed.

## IV.   Conclusion

For the foregoing reasons, Watculonis's motion [40] for reconsideration and motion [41] to amend are denied.[3]

IT IS SO ORDERED this 7th of March, 2024.

_____
Timothy C. Batten, Sr.
Chief United States District Judge

---

[3] Upon review of the docket, the Court also notices that the parties have not yet filed a filed a joint proposed scheduling order and discovery plan. Under Local Rule 16.2, this filing is overdue, and Watchulonis and remaining Defendants are ordered to file one within fourteen days of this Order.